## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Neal Cohen; Darren Chaffee; and
SSL Assets, LLC,

                 Plaintiffs,

v.

Jaffe, Raitt, Heuer & Weiss, P.C.,
Jeffrey M. Weiss, Lee B. Kellert
and Deborah L. Baughman,

                 Defendants,

Jaffe, Raitt, Heuer & Weiss, P.C.,

             Third-Party Plaintiff,

v.

CoBe Capital, LLC,

            Third-Party Defendant.

Case No.: 2:16-cv-11484-GCS-APP

### FINAL PRETRIAL ORDER

The following is the **joint** Final Pretrial Order to be considered at the Final

Pretrial Conference on September 12, 2017 at 2:00 P.M.

The attorneys appearing on behalf of the parties were:

Jeffrey Goulder
Michael Vincent
Stinson Leonard Street LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004
*Attorneys for Plaintiffs/Third-Party Defendants*

Michael P. Ashcraft, Jr.
Jeffrey S. Hengeveld
Plunkett Cooney
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304
*Attorneys for Defendants/Third-Party Plaintiff*

## 1.    Jurisdiction.

This is an action between Plaintiffs, who are citizens of New York, and Defendants, who are citizens of Michigan, with an amount in controversy exceeding $75,000. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Jurisdiction is not disputed.

## 2.    Plaintiffs' Claims.

Defendants Jeffrey M. Weiss, Lee B. Kellert, and Deborah L. Baughman are lawyers with the law firm of Jaffe Raitt Heuer & Weiss, P.C. ("Jaffe"). Plaintiffs Neal Cohen, Darren Chaffee, and SSL Assets, LLC hired Jaffe to represent them and to protect their interests in connection with Mr. Cohen and Mr. Chaffee's contemplated purchase of LSI Corporation of America, Inc. ("LSI"). Plaintiffs informed Jaffe partner Jeffrey Weiss that their overriding concern with the LSI transaction was that certain pension liabilities of LSI not spread and attach to themselves personally or to their other companies. Weiss assured Cohen/Chaffee that they could purchase LSI without having this pension liability spread to their other companies.

However, Jaffe failed to advise Plaintiffs that completing the LSI transaction would place Plaintiff SSL Assets, LLC in a controlled group with LSI, so that SSL shared in LSI's pension withdrawal liability. Mr. Cohen and Mr. Chaffee would have never purchased LSI but for Jaffe's assurances that SSL would not be exposed to pension liability. After learning of Jaffe's error, Mr. Cohen and Mr. Chaffee were forced to make further investments in LSI in an effort to prevent the pension withdrawal liability from being triggered. SSL is currently liable for $3.2 million in pension withdrawal liability, and Mr. Cohen and Mr. Chaffee have spent some $5.3 million supporting LSI. None of this investment is recoverable, as a result of Jaffe's improper advice.

Plaintiffs assert claims against Jaffe and its lawyers for legal malpractice and breach of contract. Plaintiffs claim that they were Jaffe's clients, and Jaffe owed them a duty to provide competent legal advice. Plaintiffs claim that Jaffe and its lawyers breached this duty, causing all Plaintiffs to incur damages. Plaintiffs also claim that Jaffe and its lawyers had a contract in which Jaffe promised that it would structure the LSI transaction to prevent SSL from sharing in LSI's pension withdrawal liability, or advise Plaintiffs if this could not be done; that Jaffe breached this contract when it failed to properly structure the LSI transaction in that manner; and that this breach caused Plaintiffs to suffer damages.

3.     **Defendants' Claims and Defenses.**

Neal Cohen and Darren Chaffee are in the business of acquiring underperforming businesses from large multinational corporations, often through their affiliates CoBe Capital, LLC, which had previously retained Jaffe for an unrelated transaction, and CoBe Management, LLC.  In the acquisition of LSI, Mr. Cohen and Mr. Chaffee performed due diligence that revealed the pension plan was underfunded and that any acquiring company could face potential pension withdrawal liability if, among other situations, the company stopped contributing to the plan.  Mr. Cohen and Mr. Chaffee claim that they retained Jaffe to structure the LSI transaction in a manner that avoided controlled group liability and potential pension withdrawal liability to be attached to themselves or their other entities. Critically, Jaffe provided its legal advice on the structure of the transaction based upon the facts and information provided by Mr. Cohen and Mr. Chaffee, including representations that Mr. Cohen and Mr. Chaffee did not have any common ownership in any other entity.

Plaintiffs allege that SSL Assets, LLC, a company that Defendants never communicated with or provided advice to and did not have an attorney-client relationship with, is part of a controlled group with LSI as a result of Mr. Cohen and Mr. Chaffee's undisclosed common ownership in that entity. Plaintiffs claim that SSL Assets, LLC may potentially be liable for pension withdrawal liability as a result of being in a controlled group with LSI as a result of the pension fund assessing pension withdrawal liability. Mr. Cohen and Mr. Chaffee make the speculative and contradicted claim that had they known that SSL Assets, LLC could be part of a controlled group with LSI, then they would not have acquired LSI and they would not have incurred the loss of their investment in LSI. However, Mr. Cohen and Mr. Chaffee did invest in LSI after learning that SSL Assets, LLC was purportedly part of the controlled group with LSI. After being advised that SSL Assets, LLC was purportedly part of the controlled group with LSI, neither Mr. Cohen, Mr. Chaffee, nor SSL Assets, LLC made any attempt to mitigate their alleged damages sought in this case, which could have included changing the ownership structure of SSL Assets, LLC or filing an arbitration against the pension fund to challenge the assessment of pension withdrawal liability.

## 4.    Stipulation of Facts.

The following facts are uncontested and are stipulated to by the parties:

1.     On April 3, 2013, Cohen and Chaffee sent Defendant Jeffrey Weiss ("Weiss"), a partner with Jaffe, Raitt, Heuer & Weiss, P.C ("Jaffe"), an e-mail regarding Cohen and Chaffee's proposed acquisition of LSI Corporation of America, Inc. ("LSI"). This e-mail was the first contact between Plaintiffs and Defendants regarding LSI.

2.     Jaffe never provided an engagement letter for the services provided in connection with the LSI deal.

3.     Prior to the close of the LSI deal, Weiss advised Cohen and Chaffee that the acquisition of LSI would not cause any of Cohen and Chaffee's other companies to be in a controlled group with LSI and Cohen and Chaffee would not be personally liable for LSI's pension withdrawal liability.

4.     On June 18, 2013, Cohen and Chaffee closed the LSI purchase, purchasing 100% of LSI through a holding company, LSI Holdings of America LLC ("LSI Holdings").

5.     LSI Holdings was owned 49% by Cohen and 49% by Chaffee at the time of the purchase of LSI.

6.     Cohen and Chaffee made investments in LSI on the dates and in the amounts listed in Exhibit 45.

7.     The Carpenters Labor-Management Pension Fund has determined that LSI completely withdrew from the fund as of January 15, 2016 due to the permanent closure of LSI's covered operations.

8.     At all times since 2011 through the present, SSL Assets, LLC ("SSL") has been owned 95% by Sendori Acquisition, LLC and 5% by Luz Place, LLC.

9.     Sendori Acquisition, LLC is owned 100% by Cohen.

10.    Luz Place, LLC is owned 100% by Chaffee.

**5.     Issues of fact to be litigated.**

**Issue #1:** Whether Neal Cohen, Darren Chaffee, and SSL had an attorney-client relationship with Defendants.

**Plaintiffs contend:** Defendants had an attorney-client relationship with each of Cohen, Chaffee, and SSL because it was clear to all involved that Defendants' legal advice was for their benefit.

**Defendants contend:** Defendants did not have an attorney-client relationship with SSL because neither Chaffee,  Cohen, nor any SSL representative specifically requested that Defendants represent SSL.

**Issue #2:** Whether Defendants fell below the applicable standard of care for advising Plaintiffs on controlled group liability.

**Plaintiffs contend:** Defendants fell below the applicable standard of care when they incorrectly advised Plaintiffs that the acquisition of LSI would not result

in controlled group liability for Cohen and Chaffee's other companies, despite Defendants having never gathered the necessary information to properly analyze the controlled group liability issue.

**Defendants contend:** Defendants did not breach the standard of care by asking Chaffee and perhaps Cohen, sophisticated clients, a basic question about what entities they owned in common. Chaffee's response that he did not own any entities in common with Cohen was not reasonable given Chaffee's due diligence on the issues associated with pension withdrawal liability and controlled group liability. Defendants adequately structured the acquisition of LSI Corp. to avoid LSI Corp. or LSI Holdings from becoming part of a controlled group with Cohen's CoBe related businesses.

**Issue #3:** Whether Defendants' negligence was the proximate cause of an injury to Plaintiffs.

**Plaintiffs contend:** Defendants' negligence was the proximate cause of injuries to Cohen, Chaffee, and SSL. Cohen and Chaffee would have never purchased LSI but for Jaffe's incorrect advice, and it was reasonably foreseeable to Jaffe that incorrect controlled group liability advice would cause harm to Cohen, Chaffee, and their other companies including SSL.

**Defendants contend:** Defendants were not a proximate cause of Plaintiffs' alleged damages. Cohen and Chaffee's claim that they would not have purchased LSI had they been advised that SSL was part of the controlled group with LSI is based upon speculation and conjecture. Cohen and Chaffee were aware before the acquisition that LSI had an underfunded pension withdrawal liability of approximately $3.9 million and knew that any investment into LSI up to the amount of the pension withdrawal liability amount would be lost if the company ceased operations. Cohen and Chaffee invested in LSI after learning that SSL was part of a controlled group with LSI. Neither Defendants' advice, nor the pension withdrawal liability caused LSI to fail as a business.

**Issue #4:** The amount of Plaintiffs' damages caused by Defendants' negligence.

**Plaintiffs contend:** Plaintiffs incurred $9.66 million in damages, comprising $5.3 million in lost investments, $1.10 million in lost investment return, and $3.26 million in pension withdrawal liability.

**Defendants contend:** Defendants deny that Plaintiffs are entitled to any damages, including their alleged lost investment, lost investment return, or for pension withdrawal liability. Plaintiffs alleged damages are also not recoverable because they are based upon speculation and conjecture.

**Issue #5**: Whether Plaintiffs mitigated their alleged damages.

**Plaintiffs contend:** Plaintiffs fully mitigated their damages where possible. Because Cohen and Chaffee kept LSI open as long as they did, the amount of LSI's pension withdrawal liability declined from $4.62 million to $3.26 million. There were no mitigation efforts available specifically to SSL because ERISA disregards any change of ownership or transactions undertaken where a principal purpose, even if not the primary purpose, of the transaction is to avoid controlled group liability. Thus, once SSL was in a controlled group with LSI, it could not restructure its ownership to avoid the liability. Furthermore, the deadline for contesting the Pension Fund's assessment to SSL has not yet expired, but SSL is not currently aware of any basis for a valid appeal.

**Defendants contend:**  SSL has admitted that it did not take any efforts to mitigate its alleged damages arising from the alleged pension withdrawal liability, including failing to attempt to restructure its ownership, failing to appeal or arbitrate the Pension Fund's calculation of pension withdrawal liability, and objecting to discovery seeking SSL's mitigation efforts.

**Issue #6:** Whether Plaintiffs and Defendants had a contract in which Defendants promised to structure the LSI acquisition in a manner such that Cohen's and Chaffee's other entities would not be in the LSI controlled group or to advise Plaintiffs prior to the close of the LSI acquisition if this could not be achieved.

**Plaintiffs contend:** Defendants specifically promised, in response to Plaintiffs' requests for assurances, that the LSI acquisition would not create a controlled group between LSI and any of Cohen or Chaffee's other entities. Defendants never informed Plaintiffs prior to the close of the LSI acquisition that the proposed structure would place SSL in the LSI controlled group.

**Defendants contend:** Plaintiffs' claims against Defendants sound in legal malpractice, and malpractice alone. Defendants did not make any promises or assurances to Plaintiffs that support an independent claim for breach of contract.

**Issue #7:** Whether Defendants breached the contract with Plaintiffs to structure the LSI acquisition in a manner such that it would not create a controlled group between LSI and any of Cohen or Chaffee's other entities or to advise Plaintiffs prior to the close of the LSI acquisition if this could not be achieved.

**Plaintiffs contend:** Defendants materially failed to perform their promise to prevent controlled group liability from attaching to Cohen's and Chaffee's other companies when they recommended and implemented the ownership structure for LSI Holdings.

**Defendants contend:** Notwithstanding that Plaintiffs' claims sound in malpractice alone, Defendants did not fail to perform the services related to the acquisition of LSI or otherwise breach the standard of care.

**Issue #8:** Whether Defendants' breach of contract caused Plaintiffs to suffer damages.

**Plaintiffs contend:** Defendants' failure to warn Plaintiffs that the LSI Holdings ownership structure would cause SSL to be in a controlled group with LSI forced Cohen and Chaffee to make additional investments in LSI to protect SSL from controlled group liability and eventually caused SSL to incur controlled group liability.

**Defendants contend:** Defendants' actions did not cause Plaintiffs to incur their alleged damages.

6.    **Issues of law to be litigated.**

**Issue #1:** The applicable standard of care for Defendants to advise Plaintiffs on controlled group liability.

**Plaintiffs contend:** The applicable standard of care required Jaffe to ask specific questions of Chaffee or Cohen such that Jaffe had the necessary information to accurately analyze controlled group liability prior to rendering any opinions on whether LSI would be in a controlled group with any of Cohen or Chaffee's other entities.

**Defendants contend:** The standard of care requires an attorney to obtain the information from the client so that the attorney can determine whether there are controlled group entities that could be exposed to controlled group liability if a

withdrawal from the pension plan were to occur. Defendants satisfied the standard of care.

**7.     Evidence problems likely to arise at trial.**

    **A.     Deposition transcripts.**

A joint list of deposition transcripts designated to be used at trial is shown below. The parties will provide the Court with a copy of the deposition testimony offered by each party on the morning of trial. The offering party will highlight, in color, the portions of the deposition to be offered. If both parties are offering the same deposition, only one copy of such deposition will be provided. Each copy will contain each party's highlighting (Plaintiffs will use yellow highlighting for its original designations and green for its counter-designations; Defendants will use orange highlighting for its original designations and blue for its counter-designations).

    **1.     Plaintiffs' Deposition Designations & Defendants' Counter Deposition Designations.**

| Witness | Designation (Page:Line) | Objections | Counter-Designations | Objections to Counter-Designations |
|---|---|---|---|---|
| **Deborah Baughman** | 5:4-5 | Defendants object to the use of these depositions as described in the below sections. | | |

CORE/3004695.0003/134884210.1

| Witness | Designation (Page:Line) | Objections | Counter-Designations | Objections to Counter-Designations |
|---|---|---|---|---|
| | 8:3-13 | | | |
| | 9:6-20 | | | |
| | 9:25-10:17 | | | |
| | 11:9-13:10 | | | |
| | 13:18-18:17 | | | |
| | 18:24-19:24 | | | |
| | 20:3-5 | | | |
| | 22:6-25:24 | | | |
| | 29:10-21 | | | |
| | 32:1-24 | | | |
| | 34:7-12 | | | |
| | 37:4-15 | | | |
| | 37:19-38:7 | | | |
| | 38:20-25 | | | |
| | 39:10-11 | | | |
| | 39:13-19; 22 | | | |
| | 47:8-12 | | | |
| | 47:22-48:12 | | | |
| | 55:14-56:9 | | | |
| | | | | |
| **Lee Kellert** | 5:2-8 | | | |
| | 5:23-6:2 | | | |
| | 6:16-8:4 | | | |
| | 11:1-7 | | | |
| | 12:10-22 | | | |
| | 13:2-14:2 | | | |

| Witness | Designation (Page:Line) | Objections | Counter-Designations | Objections to Counter-Designations |
|---|---|---|---|---|
|  | 16:25-17:8 |  |  |  |
|  | 19:17-24:23 |  |  |  |
|  | 28:14-19 |  |  |  |
|  | 29:10:15 |  |  |  |
|  | 31:5-18 |  |  |  |
|  |  |  |  |  |
| Jeffrey Weiss | 7:3-11 |  |  |  |
|  | 12:16-24 |  |  |  |
|  | 13:4-14:14 |  |  |  |
|  | 15:18-21 |  |  |  |
|  | 16:21-17:2 |  |  |  |
|  | 17:17-24 |  |  |  |
|  | 21:3-11 |  |  |  |
|  | 21:20-22:6 |  |  |  |
|  | 22:19-25 |  |  |  |
|  | 24:9-15 |  |  |  |
|  | 24:24-25:4 |  |  |  |
|  | 25:10-26:1 |  |  |  |
|  | 26:7-15 |  |  |  |
|  | 26:25-27:13 |  |  |  |
|  | 27:19-28:7 |  |  |  |
|  | 28:12-16 |  |  |  |
|  | 29:7-22 |  |  |  |
|  | 30:5-31:13 |  |  |  |
|  | 31:16-32:3 |  |  |  |
|  | 32:8-22 |  |  |  |

| Witness | Designation (Page:Line) | Objections | Counter-Designations | Objections to Counter-Designations |
|---------|------------------------|------------|---------------------|-----------------------------------|
|  | 33:12-17 |  |  |  |
|  | 33:25-34:22 |  |  |  |
|  | 35:2-7 |  |  |  |
|  | 35:14-36:21 |  |  |  |
|  | 39:20-40:19 |  |  |  |
|  | 41:11-42:19 |  |  |  |
|  | 43:2-45:14 |  |  |  |
|  | 46:2-15 |  |  |  |
|  | 46:20-47:3 |  |  |  |
|  | 48:21-50:5 |  |  |  |
|  | 50:18-23 |  |  |  |
|  | 51:10-20 |  |  |  |
|  | 52:7-12 |  |  |  |
|  | 52:25-53:2 |  |  |  |
|  | 55:5-9 |  |  |  |
|  | 55:23-56:12 |  |  |  |
|  | 56:19-60:18 |  |  |  |
|  | 61:4-10 |  |  |  |
|  | 63:10-64:5 |  |  |  |
|  | 65:2-66:10 |  |  |  |
|  | 66:15-67:20 |  |  |  |
|  | 68:25-70:4 |  |  |  |
|  | 72:8-73:12 |  |  |  |
|  | 73:17-24 |  |  |  |
|  | 74:4-9; 14 |  |  |  |
|  | 74:16-76:1 |  |  |  |

| Witness | Designation (Page:Line) | Objections | Counter-Designations | Objections to Counter-Designations |
|---------|------------------------|-----------|----------------------|-----------------------------------|
| | 76:6-80:5 | | | |
| | 84:1-22 | | | |
| | 85:20-86:2 | | | |
| | 87:1-17 | | | |
| | 87:22-89:14 | | | |
| | 90:8-17 | | | |
| | 91:10-92:25 | | | |
| | 93:19-95:4 | | | |
| | 96:17-100:3 | | | |

### 2. Defendants' Deposition Designations & Plaintiffs' Counter Deposition Designations.

Defendants intend to call witnesses to testify live at trial and reserve the right to use the deposition transcripts for impeachment.  Defendants object to Plaintiffs' attempt to use the depositions of any party or witness that is not unavailable on the grounds that the deposition testimony is inadmissible hearsay pursuant to FRE 802 and is not a permitted use of depositions under Fed. R. Civ. P. 32.

### B. Motions in Limine.

Plaintiffs anticipate filing a motion in limine to exclude the testimony of Defendants' expert witness Gerald Wernette because Mr. Wernette's expert report contains only unsupported, conclusory statements; therefore Defendants have failed to adequately disclose any relevant opinions of Mr. Wernette. Plaintiffs also

anticipate filing a motion in limine to preclude Defendants' expert witness Jordan Schreier from opining as to Mr. Chaffee's sophistication and knowledge. Plaintiffs anticipate filing a motion in limine to preclude Defendants from offering testimony as to the purchase price of LSI.

Defendants anticipate filing a motion in limine to prevent Plaintiffs from submitting the deposition testimony of Defendants Jeffrey M. Weiss, Deborah L. Baughman, and Lee B. Kellert, in lieu of their live testimony because their deposition testimony is hearsay and they are not unavailable for trial, and the use of deposition testimony in this manner is not permitted by Fed. R. Civ. P. 32.

Defendants also anticipate filing a motion in limine to exclude reference to Plaintiffs' alleged damages arising from lost investment and lost investment returns, including reference by Plaintiffs' expert Dwight Duncan, because those alleged damages are based upon speculation and conjecture.

### C.    Objections to Exhibits.

Objections to exhibits are listed in the exhibits section below.

### 8.    Witnesses.

### A.    Plaintiffs' Witnesses.

### a.    Witnesses Who <u>Will</u> Be Called at Trial

1. Neal Cohen (fact witness, live)
   c/o CoBe Capital
   220 E. 42nd Street, 31st Floor
   New York, NY 10017

2. Darren Chaffee (fact witness, live)
c/o CoBe Capital
220 E. 42nd Street, 31st Floor
New York, NY 10017

3. Jeffrey Weiss (fact witness, live and by deposition)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

4. Deborah Baughman (fact witness, live and by deposition)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

5. Lee Kellert (fact witness, live and by deposition)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

6. Andrew Stumpff (expert witness, live)
Butzel Long
301 East Liberty Street
Ann Arbor, MI 48104

7. Dwight Duncan (expert witness, live)
EconLit LLC
3200 N. Central Avenue, Suite 1850
Phoenix, AZ 85012

**b.    Witnesses Who <u>May</u> Be Called at Trial.**

1. Timothy Geddes (expert witness, live)
Deloitte Consulting LLP
200 Renaissance Center, Suite 3900
Detroit, MI 48051

2. Custodian of records for Jaffe, Raitt, Heuer & Weiss, P.C. (fact witness, live)
27777 Franklin Road, Suite 2500
Southfield, MI 48034

**B.    Defendants' Witnesses.**

      **a.    Witnesses Who <u>Will</u> Be Called at Trial.**

1.    Neal Cohen (fact witness, live)
c/o CoBe Capital
220 E. 42nd Street, 31st Floor
New York, NY 10017

2.    Darren Chaffee (fact witness, live)
c/o CoBe Capital
220 E. 42nd Street, 31st Floor
New York, NY 10017

3.    Jeffrey Weiss (fact witness, live)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

4.    Deborah Baughman (fact witness, live)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

5.    Lee Kellert (fact witness, live)
c/o Plunkett Cooney
38505 Woodward Ave., Suite 2100
Bloomfield Hills, MI 48304

6.    Jordan S. Schreier (expert witness, live)
Dickinson Wright, PLLC
350 S. Main St., Ste. 300
Ann Arbor, MI 48104

7.    Gerald J. Wernette (expert witness, live)
Rehmann Financial
39300 West 12 Mile Road, Ste. 100
Farmington Hills, MI 48331

      **b.    Witnesses Who <u>May</u> Be Called at Trial.**

8. Michael Strome (expert witness, live)
   Strome Actuarial Services
   31313 Northwestern Hwy., Ste. 114
   Farmington Hills, MI 48334

9. Custodian of records for CoBe Capital, LLC and CoBe
   Management, LLC (fact witness, live)
   220 E. 42nd Street, 31st Floor
   New York, NY 10017

## 9. Exhibits.

### A. Plaintiffs' Exhibits.

See attached Exhibit A – Plaintiffs' Trial Exhibits

### B. Defendants' Exhibits.

See attached Exhibit A – Defendants' Trial Exhibits

## 10. Damages

Cohen and Chaffee claim $5,085,175 in unrecovered investments in LSI, plus $211,831 in costs expended on LSI's behalf, plus either $0.06 million or $1.10 million in lost investment return (depending on the rate of return found appropriate by the jury). SSL claims $3.26 million in pension withdrawal liability.

## 11. Trial.

Plaintiffs requested a jury trial. The parties stipulate that the request was timely and properly made. The estimated length of trial is eight days.

**12.    Settlement.**

Counsel anticipate conferring and considering the possibility of settlement at a mediation scheduled for September 6, 2017 in Grand Rapids, Michigan with Jon Muth as mediator.

**13.    Filings of Trial Briefs and Jury Instructions.**

Trial briefs and jury instructions must be submitted one week before the start of trial.

**14.    Jury Expenses.**

The parties and their counsel understand that, in accordance with Local Rule 38.2, the expense to the United States of bringing jurors to the courthouse for a trial may be assessed to one or more of the parties or counsel if the jury trial is not begun as scheduled or the jurors are not used for that trial for any reason attributable to the parties or counsel.

**SO ORDERED.**

                                        s/George Caram Steeh
                                        Hon. George Caram Steeh
                                        U.S. District Judge

Dated:  September 12, 2017

.  .  .  .

.  .  .  .

. . . .

. . . .

Dated:  September 5, 2017

                            Respectfully submitted,


FOR PLAINTIFFS:                /s/ Jeffrey J. Goulder
                            JEFFREY J. GOULDER (AZ 010258)
                            MICHAEL VINCENT (AZ 029864)
                            Stinson Leonard Street LLP
                            1850 North Central Avenue, Suite 2100
                            Phoenix, Arizona 85004-4584
                            (602) 279-1600
                            E-mail: jeffrey.goulder@stinson.com
                                    michael.vincent@stinson.com

                            MARK S. BAUMKEL (P27613)
                            Co-counsel for Plaintiffs
                            30200 Telegraph Road, Suite 200
                            Bingham Farms, MI 48025
                            (248) 642-0444
                            E-mail: markbaumkel@gmail.com


FOR DEFENDANTS:                /s/ Jeffrey S. Hengeveld (w/permission)
                            MICHAEL P. ASHCRAFT, JR.
                            (P46154)
                            JEFFREY S. HENGEVELD (P66029)
                            Plunkett Cooney
                            38505 Woodward Ave., Ste. 2000
                            Bloomfield Hills, MI 48304
                            (248) 594-8202
                            E-mail:
                            jhengveld@plunkettcooney.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2017, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF; and that ECF will send an e-notice of the electronic filing to:

Michael P. Ashcraft, Jr.
Jeffrey S. Hengeveld
PLUNKETT COONEY
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, MI 48304

I hereby certify that a courtesy copy of the foregoing document was sent by U.S. first class mail on September 5, 2017, to:

Judge George Caram Steeh
Theodore Levin U.S. Courthouse
231 West Lafayette Boulevard, Room 238
Detroit, MI 48226

*/s/  Celia Munguia*