UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEAL COHEN, DAREN CHAFFEE,
AND SSL ASSETS, LLC,

Plaintiffs,

Case No. 16-CV-11484

vs.

HON. GEORGE CARAM STEEH

JAFFE, RAITT, HEUER & WEISS, P.C.,
JEFFREY M. WEISS, LEE B. KELLERT
AND DEBORAH L. BAUGHMAN,

Defendants.
_________________________________/

ORDER DENYING DEFENDANTS' MOTION
FOR JUDGMENT AS A MATTER OF LAW
AND ALTERNATIVELY FOR NEW TRIAL [DOC. 88]

Plaintiffs Neal Cohen, Darren Chaffee and one of their businesses, SSL Assets, brought this action alleging that they hired defendant law firm Jaffe, Raitt, Heuer & Weiss ("Jaffe"), and partners Jeffrey Weiss, Lee Kellert and Deborah Baughman to provide legal advice in connection with the possible purchase of LSI Corporation of America ("LSI"). Plaintiffs maintain that Jaffe and its partners provided faulty legal advice which rose to the level of legal malpractice as well as breach of contract. The court dismissed plaintiffs' breach of contract claim by granting defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)

prior to submitting the case to the jury. The issue of professional negligence was submitted to the jury, which concluded that defendants had an attorney client relationship with SSL Assets, and that there was professional negligence and proximate cause. The matter is before the court on defendants' motion for judgment as a matter of law or for a new trial.

## I. Defendants' Motion for Judgment as a Matter of Law

Defendants base their motion on the argument that the jury's verdict in this case was based on speculation and conjecture. Defendants argue that there is no evidence at all that they freely and consensually entered into an attorney-client relationship with SSL Assets. Defendants maintain that it is for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised, and that there was no direct or objective evidence at trial to establish an attorney-client relationship between defendants and SSL Assets in this case.

### A. Legal Standard

Rule 50(b) provides that a party may file a renewed motion for judgment as a matter of law, and a federal court sitting in diversity applies the standard for a directed verdict used by the courts of the state whose

substantive law governs the action. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009). The defendant bears the burden of proving, "after viewing all of the evidence in the light most favorable to the non-moving party, that reasonable minds could not differ on any question of material fact." *Id*. at 467.

In an action for legal malpractice, the plaintiff has the burden of demonstrating the existence of the attorney-client relationship. *Basic Foods Ind., Inc. v. Grant*, 107 Mich. App. 685, 690 (1981). The attorney-client relationship is based on contract; it is consensual and it may not be based on a unilateral act. However, the "contract may be implied from the conduct of the parties"; payment of a fee or a formal contract is not required. *Macomb County Taxpayer Ass'n v. L'Anse Creuse Pub. Sch.*, 455 Mich. 1, 11 (1997). The Michigan Supreme Court held that an attorney-client relationship exists when "it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession." *Id*.; *see People v. Crockran*, 292 Mich. App. 253, 259 (2011).

B. Evidence and Analysis

The April 3, 2013 email was the first contact between plaintiffs and defendants regarding the LSI deal. Chaffee's up-front communication

regarding his concern about preventing controlled group liability demonstrates that plaintiffs considered the issue to be paramount to the representation. "We also want to be sure that we aren't personally liable or put our other assets/companies at risk." The nature of controlled group liability is that it attaches only to other companies sharing certain ownership interests with the company that has the pension withdrawal liability. Controlled group liability does not attach to individuals personally. In this case plaintiffs and defendants knew that LSI had pension withdrawal liability. The evidence presented at trial supports a conclusion that Chaffee understood enough to know that by purchasing LSI there was an issue whether Chaffee's and Cohen's other companies would become part of LSI's controlled group. This evidence also supports the conclusion that Chaffee and Cohen hired defendants to advise them on the risks of controlled group liability connected with acquiring LSI so they could make the decision whether to acquire LSI.

Jeffrey Weiss had authority to bind the Jaffe law firm and the evidence was that Weiss knew that Cohen and Chaffee owned other companies and he understood their concerns and why they sought defendants' representation and advice. Weiss testified that he understood he owed a duty of care to Cohen, Chaffee and their other assets and

companies. (Trial Transcript, September 28, 2017 at 19:5-8). In spite of this knowledge, Weiss testified that he never asked Cohen or Chaffee to identify what other assets and companies they held. (Trial Transcript, September 28, 2017 at 18:17-20). This testimony supports the jury's conclusion that defendants accepted the representation of Cohen and Chaffee's "other companies."

Other evidence, including emails from Mr. Weiss to Mr. Chaffee dated May 5, 2014 and June 18, 2013, demonstrates that defendants actually provided legal advice on controlled group liability. Plaintiffs' standard of care expert, Andrew Stumpff, testified it was incumbent on defendants to explain the controlled group tests and gather the complete facts before rendering their opinions. Stumpff is an ERISA lawyer and testified that under the circumstances in this case, with the April 3, 2013 email and the now known ownership structure of SSL Assets, he would have believed his client is the "group" including SSL Assets. (Trial Transcript, Sept. 28, 2017 at 151:13-19). Of course, the defendants did not know the ownership structure of SSL Assets, or even that SSL Assets existed, but that is only because they did not make the inquiry required to obtain the information necessary to ascertain SSL's existence and what that meant regarding controlled group liability. Without being told the legal tests for determining

controlled group liability, plaintiffs could not be expected to know which of their other companies to bring to defendants' attention.

Weiss admitted at trial that he (1) clearly understood plaintiff's concerns; (2) understood that his charge was to structure the LSI acquisition in a way that would protect Cohen and Chaffee's other companies from being part of a controlled group with LSI, or to advise them prior to closing the acquisition if this could not be done; (3) knew Cohen and Chaffee owned other companies; (4) owed a duty of care to Cohen and Chaffee and also to their other companies; and (5) advised Cohen and Chaffee that the purchase of LSI with a 49%-49%-2% ownership structure would not expose any of their other companies to controlled group liability. What Weiss and the other defendants failed to do was the very thing they were hired to do – explain the controlled group tests and explore whether any of Cohen or Chaffee's other companies might be subject to controlled group liability.

Under defendant's theory, if a lawyer fails to ask the necessary questions to competently perform a controlled group analysis, he would be immunized from his own negligence as long as he also fails to ask the identity of the companies that he exposes to liability. The injured companies would never have standing to sue the lawyer for malpractice.

Chaffee testified Weiss never asked him for a list of their other companies and never explained the brother-sister test or attribution rules, and Weiss admitted to not explaining the attribution rules. Weiss never asked the relevant and necessary questions, as identified by standard of care expert Andrew Stumpff. Nor did Weiss ask which companies Cohen and Chaffee were concerned about, or what other companies even existed.

As to the lack of a written engagement letter, Jaffe could have limited the scope of its representation with an engagement letter clearly informing Chaffee and Cohen that their other companies were not clients. Jaffe cannot use its failure to provide an engagement letter as a defense to malpractice.

Chaffee and Cohen understood controlled group liability enough to know that their "other companies" might be at risk and therefore engaged the defendants for legal advice. At that point it became the lawyers' job to determine who the clients were among the "other companies" because that is who they were hired to protect. This argument was made to the jury and the court finds there was sufficient evidence to support the jury's conclusion that defendants had an attorney-client relationship with SSL Assets.

## II. Defendants' Motion for a New Trial

Defendants move for a new trial pursuant to Rule 59. The court is charged with determining whether "the jury has so disregarded the credible evidence that its verdict is against the clear weight thereof." *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967). The court concludes that this is not the case with regard to the jury's conclusion that SSL had an attorney-client relationship with defendants. In particular, Mr. Weiss admitting owing a duty of care to Cohen and Chafee's other companies and that his legal advice was for the benefit of those companies. Mr. Stumpff testified that defendants had the obligation of inquiring into Cohen and Chaffee's other companies in order to adequately perform the controlled group liability analysis. The court refers back to its analysis of the evidence in relation to defendants' motion for judgment as a matter of law and concludes that the jury's verdict was not against the weight of the evidence.

## III. Conclusion

For the reasons set forth above, defendants' motion for judgment as a matter of law, and alternatively to grant a new trial, is DENIED.

IT IS SO ORDERED.

Dated: February 28, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 28, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk